**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-86-FDW**

| | |
|---|---|
| **BENJAMIN GODWIN SWANSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **GASTON COUNTY SHERIFF'S** ) | |
| **OFFICE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 11). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 6).

**I.     BACKGROUND**

*Pro se* Plaintiff filed the Complaint while incarcerated in the Mecklenburg County Jail and complains about incidents that occurred in the Gaston County Jail. He seeks relief under the Civil Rights Act, 42 U.S.C. § 1983, and Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq.* ("PREA"). Plaintiff names as Defendants in their official and individual capacities: the Gaston County Sheriff's Department; and Gaston County Jail employees Major and Assistant Jail Administrator Becky Cauthran, Deputy M. Becton, and Detention Officer H. Nolan.

Construing the Amended Complaint liberally and accepting it as true, in Spring 2017, Plaintiff was experiencing difficulty "getting a spot" in the phone line "due to it being unlawfully governed by inmate gangs, thus, Gang Activity." (Doc. No. 11 at 3). The Gaston County Jail has zero tolerance for gang activity pursuant to the jail handbook. Plaintiff complained to "Administrators" and was asked to provide more details about how they were governing the phones and he did so on the Jail's electronic kiosk. (Doc. No. 11 at 3). Sgt. Lomick can confirm

1

that, at one time, inmates were trying to "run the phone line," and jail officials were aware "and worked together to stop the illegal activity." (Doc. No. 11 at 3).

Plaintiff was moved from Echo Dorm to the higher-security Alpha Dorm at the Gaston County Jail on May 17, 2017, because Defendant Becton did not like Plaintiff's "personal conduct" that included: helping illiterate inmates, helping new inmates use the complex phone system, helping senior citizens cut their toenails, talking about jail regulations with other inmates, educating others to prevent them from getting in trouble, and frequently speaking to other jail officials about changing policy to make the facility safer for everyone. (Doc. No. 11 at 2). Plaintiff claims that none of these activities violated jail policy.

After being moved to the higher security dorm, Nolan said to Plaintiff, "I heard about you, you're in my territory now." (Doc. No. 11 at 3). Plaintiff does not know what she meant by that and it has Plaintiff greatly concerned for his welfare. He asked to speak with any captain about the groundless classification decision. Defendant Becton decided to speak to Plaintiff in Oats' presence in the library. Becton denied any involvement in the housing assignment, and said Plaintiff was belligerent and he "needed to mind [his] own damn business." (Doc. No. 11 at 3).

Several days later, Plaintiff asked to speak to "mental health" about "some anxiety he was experiencing because of the decision classification made." (Doc. No. 11 at 4). Mental Health Counselor Andrew Berger found a "Secret Report" written by Becton, indicating that Becton was involved in the transfer decision despite her denials, "because she wrote it, and ordered her officers not to tell Swanson." (Doc. No. 11 at 4). Berger told Plaintiff in an electronic message never to contact him again and that he wanted no part in the retaliation by Becton.

Days later, Plaintiff noted a significant change in officers' attitude towards him. A deputy who asked to remain anonymous told him that "Becton [was] talking about you in our meetings

2

this week," and "to harass you by any means." (Doc. No. 11 at 4). Plaintiff filed a grievance asking to speak to Becton, which was granted. Plaintiff told her that he found out she lied about the retaliation and that she had a personal problem with him helping stop the gang activity on the phones. Becton then "verbally confessed to the findings." (Doc. No. 11 at 5). Becton further disclosed that she felt Plaintiff had too much intelligence and that his name is frequently brought up at meetings. She said she was not there to be nice or friendly. She "doesn't like inmates feeling comfortable" and it was Plaintiff's fault for asking for assistance from Becton about the phones. (Doc. No. 11 at 4). Plaintiff said he was asked to help and that jail officials are encouraged to work together and nobody has to be "mean, evil or enemies." (Doc. No. 11 at 5). Carson immediately stated that Plaintiff is correct but Becton did not agree. Becton understood how her actions violated Plaintiff's rights, stating "It's time for you to see new [illegible]," and her statement had no penological justification. (Doc. No. 11 at 5). Plaintiff submitted a grievance to Defendant Cauthran in efforts to remedy the incident. Multiple requests to respond to the grievance were denied between May and June 28, 2017 and not responses were received.

On June 28, 2017, Plaintiff was placed on "privilege restriction" by Defendant Nolan for having a towel at the tables in the dorm. Plaintiff informed Nolan that he was ordered to place towels at the tables while out for recreation if towels are not being used, by Officer Branch on June 27. Nolan claimed that Plaintiff was placed on privilege restrictions because Plaintiff was given two direct orders and complied with the most recent order pertaining to towels, and no fault of Plaintiff's resulted in her anger. That afternoon, Plaintiff advised Nolan that he needed to submit a grievance pursuant to the Jail Handbook, and Nolan told him "this is what you get for making my friends mad." (Doc. No. 11 at 6). Sgt. Frady also refused to speak to Plaintiff. That same day, video footage will show multiple inmates in violation of the code of conduct including having

towels at tables, but nobody else was reprimanded for the same thing on June 28. Nolan and her supervisory made a rule that is not in accordance with the jail, stating that inmates were not allowed to use towels unless they were drying off. This created a PREA issue against inmates. Plaintiff submitted a PREA complaint against Nolan and her supervisor via the Jail kiosk. The next day, Plaintiff received two responses from PREA coordinators Cauthran and Deputy Assistant chief Darrell Griffin. Griffin spoke privately about what happened and explained that "staff voyeurism" could happen if inmates were not allowed to use towels as privacy curtains in the shower. (Doc. No. 11 at 7). Cauthran replied via kiosk asking for more information because his claim was valid, and Plaintiff replied as requested. Griffin inspected the doors and agreed there was a valid claim and worked on getting bigger shower doors. A staff employee, Mike, measured the doors. A memo was sent by Griffin to confirm this. Becton intercepted Plaintiff's response to the PREA coordinator and replied posing as a PREA coordinator, stating Plaintiff's claim was invalid. Becton did not know that the claim was already deemed valid and approved twice. Jail officials have the option to view complaints on officers on different shifts. They also have the option to respond for other officers but rarely do so. Becton and Nolan are conspiring against Plaintiff to cover up violations whenever Plaintiff tried to grieve an issue. On July 1, 2017, the grievance against Nolan for the June 28, 2017 incident was denied by three officials (Sgt. Stewart, Cpt. Maxwell and Becton), because Plaintiff was being disrespectful. However, Plaintiff was never written up for that and video footage shows that he complied with all orders on June 28.

Any time Nolan was scheduled to work in the Alpha dorm, "she made sure Swanson was denied of anything possible" including razors, soap, sharpened pencils, and answers to questions. (Doc. No. 11 at 8). This was done on purpose to get revenge for her "friend" Benton. (Doc. No. 11 at 8). Plaintiff sent requests and grievances for every incident against the wrong being done

4

every time but he never received a remedy for Nolan and Benton retaliating against him.

When Plaintiff spoke to Becton and Carson in the library several weeks ago, he explained with handwritten charts and lots the harassment with documentation correlating to the video system to prove his grievances. Carson reviewed the papers and was relieved to find his name was not on it. Carson kept reading and asked Becton "why she was violating procedure." (Doc. No. 11 at 8). Becton was upset when presented with the documents and said "see, there you go again, you need to mind your business." (Doc. No. 11 at 9).

On August 1, 2017, Nolan left the keys in the drop box unattended in Alpha dorm long enough for an inmate to have possession, which is contraband. Plaintiff witnessed it and had to report it for safety and pursuant to the Jail handbook. Nolan was sent home or reprimanded.

On August 6, 2017, Plaintiff asked Nolan if he could call his lawyer and she said "No! oh hell no!" then stated "oh, and go ahead, write it down in your little notebook." (Doc. No. 11 at 9). There was no way Nolan would have known about his notebook without being informed. Becton and Carson were the only ones who knew about the notebook at that time. Therefore, Becton must have informed Nolan.

On August 6, 2017, Nolan allowed inmates who had their phone privileges revoked to use the phone. This was to taunt Plaintiff.

On August 10, 2017, Nolan conducted a cell search and, allegedly, randomly selected Plaintiff. Matthew Soles, Plaintiff's roommate at the time, was instructed to sit at the table. Plaintiff was immediately escorted to the book-in/intake holding cells. About an hour later, Plaintiff returned to see everything in disarray and legal mail pertaining to this case missing. Soles told Plaintiff that, while Nolan was searching, she kept repeating to herself "where is it? … where is it? …" and when she found something she stated "Nixon! I found it! I found his paperwork!" then

ended the search. (Doc. No. 11 at 10). The only missing paperwork and legal mail pertained to Plaintiff. Plaintiff sent a grievance stating his legal mail was taken and that he wanted to speak to a supervisor. Instead, the grievance was interrupted by Becton. She said she would look into it when Captain Hagans should have, and no result occurred. Becton is not Nolan's supervisor.

On August 24, 2017, Inmate Barker and Plaintiff were walking around the dayroom talking about cars when an inmate suddenly threw a deck of Uno cards in the trash. Barker asked Plaintiff if he would help retrieve them. This is not against any policy or procedure. Nolan ordered both of them to stop and place the cards in the trash and put the entire bag in the vestibule. They complied. Nolan then ordered only Plaintiff back into his cell and suspended his rec time for the rest of the day.

Between July and August 29, 2017, Plaintiff wrote to Cauthran and NC DPS for help and advised Cauthran and Nolan about the 8/10 incident and other incidents. He received no response from Cauthran. On September 13, 2017, Plaintiff's cell was searched. Contraband (a razor blade) was allegedly found, and officers said "ah, ha! … we got you now, Swanson." (Doc. No. 11 at 11). Plaintiff denied the allegations. The razor blade was allegedly found in the upper section of the desk which is a neutral location. The section was last assigned to inmate Jason Clemmer; a report written by Deputy Eaker says that Clemmer was the only person with knowledge of the razor blade. Plaintiff was unlawfully charged with a felony and the charges were dismissed months later. Pursuant to jail policy, if both inmates deny contraband, then both were supposed to be charged. Becton confirmed this and the charges were dismissed because of jail officials not following procedure. Plaintiff submitted a grievance and Becton denied it after confirming that the proper procedure was not followed. Plaintiff appealed to the Major but no action was taken. Sgt Shirley intercepted the grievance and threatened to place Plaintiff on privilege restriction for contacting

the Major again. Plaintiff asked to speak to Shirley's supervisor and the request was granted. Plaintiff spoke to Cpt. Maxwell, explained the situation, and asked that Major Cauthan be notified. Maxwell agreed and did so.

On October 6, 2017, Plaintiff called Assistant Chief Griffin after lunch and told him that his legal mail was still missing.

On October 10, 2017 Hogan and Lancaster returned the legal mail that Nolan had illegally confiscated. He explained that Nolan had to have intentionally read all the legal mail to selectively pick the papers with her name on it.

When Plaintiff receive legal mail from NC prison legal services, he has been requesting certified copies of his trust fund but never received it until it was court ordered.

On October 10, 2017, someone masking their voice told Plaintiff "to take a plea, and we'll stop messing with you." (Doc. No. 11 at 13). Plaintiff asked the officer to identify themselves but there was no reply. Becton and Carson were the only two employees who had knowledge that Plaintiff received a plea recently.

On December 11, 2017, Plaintiff asked to speak with Carson about his supervisors and why he never got a response from Cauthran trying to "resolve this mess". He said Cauthran tells Becton to handle it and Cauthran does not like Plaintiff although they never met. Cauthran received Plaintiff's grievances and requests and made a choice to do nothing. The entire time, Cauthran ignored Plaintiff's complaints.

On February 8, 2018, Plaintiff would wake up seeing a destroyed envelope addressed to the US District Clerk of Court returned, this is the third time it happened.

On March 5, 2017, Plaintiff was transferred to Mecklenburg Co Jail. On information and belief, the administrator made phone calls asking to transfer Plaintiff in retaliation due to the civil

complaint. Plaintiff had been housed at Gaston since May 18, 2015.

Plaintiff used the Gaston Jail prisoner grievance procedure to resolve the problem. Numerous requests and grievances filed between May 7, 2017, and February 9, 2018. The grievance and appeals were denied. Plaintiff requested a copy of all his grievances but his request was denied. The grievances are stored electronically in Gaston County Jail kiosks.

Plaintiff claims that Becton violated free speech and association by willfully changing his housing location and telling him to stop talking to jail officials, contrary to jail handbook; punished him for exercising his first amendment rights (filing grievances, talking to prison officials, helping other inmates); subjected him to cruel and unusual punishment via deliberate indifference to the harassment and discrimination by Nolan and failing to timely respond. As a result of his "injuries" he suffered anxiety, emotional distress, and mental suffering (Doc. No. 11 at 15).

Plaintiff claims that Nolan violated his right to be free from discrimination by unfairly singling him out for mistreatment then irrationally punishing him without a legitimate government purpose with regards having a towel near the table and making a personal decision not to allow towels for privacy curtains, creating a PREA concern; violated the Fourteenth Amendment, causing injury to Plaintiff's rights; retaliated and harassed Plaintiff by placing him on "privilege restriction" and subjecting him to cell searches with no penological need, but rather, to look at his legal mail and his notes for grievances against her (Doc. No. 11 at 16); and the First and Fourteenth Amendment violations caused anxiety, emotional distress and suffering.

Plaintiff claims that Cauthran injured his Eighth Amendment rights, causing anxiety, emotional distress and suffering.

Plaintiff claims that he will continue to be injured if he does not get the injunctive relief he seeks.

8

Plaintiff seeks declaratory judgment, preliminary and permanent injunctions, apology letters, compensatory, punitive, and nominal damages, costs, a jury trial, and any other relief the Court deems just, proper, and equitable.

## II. STANDARD OF REVIEW

A "court shall dismiss [a prisoner's] case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal

9

civil complaints including those filed under § 1983 and Bivens). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Parties**

**(A) Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Accordingly, claims against individuals not named in the case caption are dismissed.

**(B) Official Capacity Claims**

Counties and municipalities, are political subdivisions of a state that can qualify as a "person" under Section 1983. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 485 (1986)

When determining whether or not a government official is an agent of the state or of a political subdivision for the purposes of Section 1983, the "inquiry is dependent on an analysis of state law." McMillian v. Monroe County, 520 U.S. 781, 785 (1997). Alleging that a county or municipal employee committed a constitutional violation is necessary, but not sufficient, to state a claim against a county or municipality. A county or municipality may by found liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). For § 1983 liability to extend to a local government, the policy or custom must be the "moving force" that resulted in the constitutional violation. Monell, 436 U.S. at 694. Further, a county "may only be held liable for acts for which the county has final policymaking authority." Parker v. Bladen County, 583 F.Supp.2d 736, 739 (E.D.N.C. 2008). State law governs whether a county has final policymaking authority on a particular topic. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Stockton v. Wake County, 173 F.Supp.3d 292 (E.D.N.C. March 24, 2016). "[T]he Eleventh Amendment does not bar a suit against a North Carolina sheriff in his official capacity…." Harter v. Vernon, 101 F.3d 334, 343 (4th Cir. 1996); see also Cash v. Granville County Bd. of Educ., 242 F.3d 219, 227 (4th Cir. 2001). "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

      Plaintiff names as Defendants the Gaston County Sheriff's Office and the individual Defendants in their official capacities. Plaintiff does not allege that the Gaston County Sheriff had any personal involvement in the alleged violations. Nor does Plaintiff state that any official policy is to blame for the alleged violations of his rights. Therefore, Plaintiff's official capacity claims against the Sheriff's Office and the individual Defendants, which are essentially duplicative claims

against the Sheriff, will be dismissed.

**(2)    Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See American Civil Libs. Un. of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff alleges that he was harassed, treated unfairly, and transferred because he helped other inmates and voiced concerns about issues including gang activity to staff through grievances and complaints. Plaintiff has stated a plausible claim against Defendants for retaliation, so this claim will be permitted to proceed against Defendants **Cauthran, Becton,** and **Nolan**.

**(3)    Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be

12

deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

### (A) **Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

13

Plaintiff appears to allege that his property loss resulted from a random, unauthorized action rather than an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), *aff'd,* 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion).

Therefore, Plaintiff's claim that property was missing following a cell search will be dismissed.

**(B) Classification & Transfer**

A change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff claims that he was moved to the higher-security Alpha dorm, and that he was later transferred from the Gaston County Jail to the Mecklenburg County Jail. However, he fails to explain how any of these transfers imposed significant and atypical hardship on him. Therefore, Plaintiff's claims that he was transferred to a different dorm, and to a different jail, fail to state a due process claim and will be dismissed.

**(C) Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A prisoner's "access to and participation in the prison's grievance process are not constitutionally
14

protected…." Taylor v. Lang, 483 Fed. Appx. 855, 857 (4th Cir. 2012).

To the extent that Plaintiff alleges that his grievances and grievance appeals were denied, this fails to state a due process claim and will be dismissed.

**(4)** **PREA**

The Prison Rape Elimination Act, ("PREA") seeks to establish "zero tolerance" for the incidence of prison rape. There is no basis in law for a private cause of action under § 1983 to enforce a PREA violation. "[S]ection 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." Doe v. Broderick, 225 F.3d 440, 447 (4th Cir.2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. See Chapman v. Willis, 2013 WL 2322947 at *4 (W.D. Va. May 28, 2013); Ball v. Beckworth, 2011 WL 4375806 at *4 (D.Mont. Aug. 31, 2011) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.... The statute does not grant prisoners any specific rights." Chinnici v. Edwards, 2008 WL 3851294 at *3 (D.Vt. Aug.13, 2008).

Plaintiff appears to allege that various Defendants violated the PREA via the Jail towel policy. However, there is no private cause of action under the PREA so this claim will be dismissed as frivolous. See, e.g., Krieg v. Steele, 599 Fed. Appx. 231 (5th Cir. 2015) (dismissing as frivolous prisoner's argument that his rights under the PREA were violated because other courts have found that the PREA does not establish a private cause of action for allegations of prison rape and plaintiff cited no case in support of his position).

15

**(5)    Injunction**

Plaintiff contends that he needs preliminary and permanent injunctive relief to prevent constitutional injuries from continuing. However, a prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

The alleged incidents occurred at the Gaston County Jail and Plaintiff presently resides at the Mecklenburg County Jail. He has failed to allege why any of the alleged incidents are in danger of recurring. Therefore, his claims for preliminary and permanent injunctive relief will be dismissed as moot.

### IV.    CONCLUSION

For the reasons stated herein, the Amended Complaint is sufficient to proceed against Defendants **Cauthran, Becton,** and **Nolan** for retaliation. The remaining claims and Defendant are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS THEREFORE ORDERED** that:

1. The Amended Complaint, (Doc. No. 11), survives initial review pursuant to 28 U.S.C. § 1915 as to Defendants Cauthran, Becton, and Nolan for retaliation.

2. The remaining claims and Defendant are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

3. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Cauthran, Becton**, and **Nolan**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is

respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: August 24, 2018

Frank D. Whitney
Chief United States District Judge